UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES DAVIS, JR.,

                    Plaintiff,                    Case Number: 08-14561

v.                                                MARIANNE O. BATTANI
                                                  UNITED STATES DISTRICT COURT
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.                    VIRGINIA M. MORGAN
                                                  UNITED STATES MAGISTRATE JUDGE

_____ /

## REPORT AND RECOMMENDATION

        Plaintiff, James Davis, Jr., appeals, the Social Security Commissioner's decision denying him

disability insurance benefits.  This case comes before the court on the parties' cross-motions for

summary judgment.  For the reasons stated below, the court recommends that the Commissioner's

motion for summary judgment be **GRANTED**, that Plaintiff's motion for summary judgment be

**DENIED**, and that Plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

## I. Background

        On November 30, 2004, Plaintiff filed an application for a period of disability and disability

insurance benefits.  (Tr. 50).  Plaintiff alleged a disability onset date of July 30, 2004.  (Tr. 50).

Plaintiff claimed disability due to injuries he suffered in a work accident in 2002 and an adjustment

disorder due to depressed mood.  (Tr. 65, 19).  Plaintiff fell off of a platform and broke both of his

elbows and injured his back.  (Tr. 65).

1

Plaintiff's application was initially denied on January 28, 2005. (Tr. 38). Thereafter, Plaintiff filed a timely request for a hearing. Plaintiff appeared for a hearing, with his attorney, on August 9, 2007. (Tr. 16). Subsequently, on September 27, 2007, Administrative Law Judge Thomas L. English issued a decision affirming the denial of disability benefits. (Tr. 24).

ALJ English applied the five-step sequential analysis set out in the SSA's regulations to determine whether Plaintiff qualified for benefits. 20 C.F.R. § 404.1520(b)-(f). At step one, ALJ English concluded that Plaintiff had not engaged in substantial gainful activity since his alleged onset date, July 30, 2004. (Tr. 18). At steps two and three, ALJ English determined that Plaintiff had the following severe impairments: degenerative disc disease, lumbar spine, and trauma to the upper extremities. (Tr.18). ALJ English also determined that Plaintiff's depression was not a severe impairment. (Tr. 19). At step four, the ALJ decided that Plaintiff has the residual functional capacity to perform light work, "lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently." (Tr. 19-20). ALJ English, therefore, found that Plaintiff had the residual functional capacity to perform light work based on his finding that Plaintiff's allegations of pain were overstated and inconsistent with the evidence and the fact that Plaintiff did not present evidence of treatment for depression. (Tr. 21-22). The ALJ also found that Plaintiff could not perform any of his past relevant work, thus shifting the burden to the Commissioner to prove that Plaintiff is capable of performing other work. (Tr. 23). At step five, the ALJ found that Plaintiff was capable of performing other work and, thus, not disabled. (Tr. 23-24).

Plaintiff filed a timely request for review with the Social Security Appeals Council. The Appeals Council denied Plaintiff's request on August 28, 2008. (Tr. 6).

On October 27, 2008, Plaintiff initiated this civil action for judicial review of the denial of

benefits. (Doc. No. 1). The Honorable Marianne O. Battani referred this case to this court on October 28, 2008, for determination of all non-dispositive motions and issuance of a Report and Recommendation.

## II. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. *Brainard v. Secretary of HHS*, 889 F.2d 679, 681 (6th Cir. 1989); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in *Brainard*, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." "[The] decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key*, 109 F.3d at 273.

## III. Analysis

Plaintiff argues, asserting various grounds, that the Commissioner erred as a matter of law in assessing his credibility and, as a result, formed an inaccurate hypothetical that did not accurately portray his impairments. (Pl.'s Mot. 6).

3

Plaintiff first contends that the Commissioner did not present substantial evidence that Plaintiff is capable of performing other jobs in the economy because the hypothetical the ALJ posed to the vocational expert was flawed, as it did not accurately represent Plaintiff's impairments. . (Pl.'s Mot. 7).  The Commissioner responds that the hypothetical question contained greater and more specific limitations than the residual functional capacity finding in the ALJ's decision, thus the difference between the hypothetical and residual functional capacity finding is immaterial. (Def.'s Resp. 8).

A claimant must meet all five parts of the test set forth in 20 C .F.R. § 404.1520 in order to receive disability benefits from Social Security.  The five-step test is as follows: (1) the claimant must not be presently employed, (2) the claiman's impairment must be "severe," (3) the impairment must meet or medically equal a "listed impairment" as defined by the Social Security Administration, (4) the claimant must not have the residual functional capacity to perform his former work, and (5) the claimant must not have the residual functional capacity to perform any other substantial gainful activity.  *See* 20 C.F.R. § 404.1520(a)-(f).  If a claimant satisfies the first four steps, the burden of proof then shifts to the Commissioner, who must prove that the claimant has the residual functional capacity to perform other jobs in the economy.  *See Preslar v. Secretary of Health & Human Servs*., 14 F.3d 1107, 1110 (6th Cir.1994).  In deciding whether the claimant has the residual functional capacity to perform any other substantial gainful activity, the ALJ may rely on the testimony of a vocational expert in response to a hypothetical question. *See Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir.1987).  The hypothetical question, however, must accurately describe the claimant's physical and mental impairments. *See id.*

The ALJ concluded that despite Plaintiff's impairments, Plaintiff was not disabled because

there were a significant number of jobs in the economy that Plaintiff could perform. (Tr. 23-24). Specifically, the ALJ found, based on the testimony of the vocational expert, that Plaintiff could perform the following vocations: general office clerk, collator and cashier. (Tr. 23). The vocational expert's opinion was based on Plaintiff's age, education, work experience and residual functional capacity. (Tr. 23). In the ALJ's opinion, he concluded that Plaintiff had the residual functional capacity to perform light work, i.e., lift, carry, push or pull 20 pound occasionally and 10 pounds frequently, and must be able to sit and stand at will. (Tr. 20). At the administrative hearing, however, the ALJ posed the following hypothetical the vocational expert:

> Doctor, assume we have a hypothetical person able to perform unskilled work at a light exertional [sic] level as defined in the regulations and lifting and carrying up to 20 pounds occasionally and ten pounds frequently requiring a sit/stand at will option but no repetitive bending, twisting or turning. No climbing, crawling, squatting or kneeling and no constant push, pull, grip or grasp. Would such a person be capable of performing any of the claimant's past work as typically performed in the economy or as the claimant performed it?

(Tr. 699). The vocational expert responded: "No, Your Honor."

> The ALJ then asked the vocational expert:

> Assume we have a hypothetical person the same age as the claimant, same level of education and past work history and who's residual capacity as was previously stated. Would such a person be capable of performing other jobs?

(Tr. 699-700).

> The vocational expert responded:

> He would be, Your Honor. I would cite as some example positions in the clerical industry, general office clerk positions. In the business services and clerical industry, collator operator positions. In the wholesale and retail trades industry cashier positions.

(Tr. 700).

> It is apparent that the hypothetical the ALJ posed at the hearing was more detailed and

5

contained more restrictions than the residual functional capacity finding that the ALJ made in his opinion.  Thus, even with the additional restrictions the ALJ posed to the vocational expert, the vocational expert still opined that Plaintiff would be able to do certain types of work.  Plaintiff's argument that the ALJ used a different set of limitations in the hypothetical than in the residual functional capacity finding, to the detriment of Plaintiff, is simply not true.  If anything, Plaintiff benefitted from the more stringent hypothetical because the more stringent hypothetical made it more difficult for the Commissioner to prove that Plaintiff is capable of working.  Moreover, Plaintiff has offered no authority for his argument that the hypothetical and the residual functional capacity must contain the same limitations; on the contrary, the hypothetical is only required to "accurately describe the claimant's physical and mental impairments."  Plaintiff does not explain why the hypothetical does not accurately describe his physical and mental impairments, other than to say that the hypothetical does not match the residual functional capacity finding.  The difference between the hypothetical and the residual functional capacity, as explained above, is not an error requiring reversal, and Plaintiff is not entitled to relief on this ground.

Plaintiff next argues that the ALJ failed to discuss why he chose to deviate from the manipulative restrictions suggested by the state agency reviewing physician.  (Pl.'s Mot. 8).  The Commissioner responds that Plaintiff relies on a document completed by a state agency doctor for Plaintiff's prior application for disability insurance benefits, which the ALJ did not reopen.  (Def.'s Resp. 8).  The Commissioner also notes that the ALJ incorporated the manipulative restrictions into the hypothetical he posed to the vocational expert.  (Def.'s Resp. 8).

The court finds that the ALJ could not have deviated from the manipulative restrictions because the manipulative restrictions were not in place at the time Plaintiff applied for benefits.  The

6

manipulative restrictions were recommended by a state agency reviewing physician in January 2003. (Tr. 420-423).  The state agency physician reviewed Plaintiff's medical records in connections with Plaintiff's earlier application for disability benefits.  (Tr. 420).  The manipulative restrictions were not reiterated in connection with Plaintiff's current application for benefits.  Thus, the ALJ was not required to consider the manipulative restrictions.  Even so, the ALJ  included physical limitations in his hypothetical to the vocational expert, which described a person who could not perform constant pulling, pushing, gripping or grasping.  (Tr. 699).  For these reasons, Plaintiff's argument is without merit.

Lastly, Plaintiff contends that the ALJ did not properly evaluate his credibility, with respect to his complaints of pain, by failing to use the relevant credibility factors required in the regulations and case law.  (Pl.'s Mot. 9).  Plaintiff asserts that the ALJ improperly cited or evaluated certain pieces of evidence and trial testimony, which this court will address in turn.  (Pl.'s Mot. 11).

Plaintiff first argues that the trial testimony does not support the  ALJ's finding that Plaintiff had increased his activity level to 1-2 mile walks a day.  (Pl.'s Mot. 11).  As the Commissioner notes in his brief, the ALJ did not state that Plaintiff testified at the hearing that he increased his activity level.  (Def.'s Resp. 9; Tr. 21).  Rather, the ALJ wrote that Plaintiff had told his doctor that he had "increased his physical activity level to include 1-2 mile walks."  (Tr. 21).  The ALJ's statement is supported by Plaintiff's medical records.  On December 15, 2004, Plaintiff reported to his doctor that he was "walking up to a mile a day; sometimes two miles."  (Tr. 538).  Plaintiff's assertion that the ALJ misstated Plaintiff's physical activity level is, therefore, unfounded.

Plaintiff next argues that the ALJ did not credit the following statements that Plaintiff made at the hearing: 1) he is taking prescription drugs for pain; 2) he is unable to perform yard work as

he once did; 3) he naps one to three hours a day; 4)  he must sit or lay in certain positions to relieve his pain; and 4) he can have three or four "bad days" a week.  (Pl.'s Mot. 11-12).   The Commissioner responds the ALJ's opinion contains a lengthy and detailed credibility assessment, in which the ALJ expressly considered the medical evidence, medical opinion evidence, and Plaintiff's treatment, medications and activities.  (Def.'s Resp. 9).  The Commissioner urges the court to affirm the ALJ's weighing of the credibility factors.  (Def.'s Resp. 9).

Plaintiff's arguments lack merit.  The essence of Plaintiff's arguments is that the ALJ chose to rely more heavily on the medical evidence and medical opinion evidence than on Plaintiff's testimony regarding his pain and limitations.  There is nothing inherently erroneous with the ALJ's decision to rely on his own assessment of the record rather than rely exclusively on Plaintiff's testimony.  *See* S.S.R. 96-7p (stating that ALJs may rely on "[s]tatements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history" to assess credibility).

Moreover, the ALJ noted inconsistences between Plaintiff's reports to Dr. Graf regarding his pain and physical limitations and Plaintiff's testimony at the hearing regarding his allegedly disabling physical impairments.  (Tr. 21).  In addition, the ALJ cited medical evidence and opinion that contradicted Plaintiff's allegations of disabling physical impairments.  (Tr. 21).  Notably, Plaintiff received virtually no medical treatment from 2005 to 2007.  (Tr. 21).  It was for these reasons that the ALJ found that Plaintiff was not entirely credible.  In light of this court's deferential approach to credibility assessments, Plaintiff has failed to demonstrate that the ALJ's adverse-credibility finding was not supported by substantial evidence. *See Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir.1994) ("The ALJ's credibility findings are subject to substantial deference

8

on review . . . .") (citation omitted).  Thus, this court will not disturb the ALJ's credibility finding.


## V. Conclusion

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that Plaintiff's motion for summary judgment be **DENIED**, and that Plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991)..  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing

party may file a response.  The response shall be no more than 20 pages in length unless, by motion

and order, the page limit is extended by the court.  The response shall address  each issue contained

within the objections specifically and in the same order raised.


S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge


Dated: October 28, 2009

---

## PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF
System and/or U. S. Mail on October 28, 2009.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan

10